CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 6 2020

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DRUMMOND COAL SALES, INC., )
)
Plaintiff, ) Civil Action No. 7:16-cv-00489
)
v. )
) By: Michael F. Urbanski
NORFOLK SOUTHERN RAILWAY ) Chief United States Judge
COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION

This matter is before the court on defendant Norfolk Southern Railway Company's motion for judgment as a matter of law or, alternatively, for a new trial, ECF No. 343, and plaintiff Drummond Coal Sales, Inc.'s motion for entry of judgment, ECF No. 342. A hearing was held on these motions on January 30, 2020. For the reasons set forth herein, the court will **DENY** Norfolk Southern's motion for judgment as a matter of law or a new trial and **GRANT** in part and **DENY** in part Drummond's motion for entry of judgment.

I.

On January 20, 2006, Norfolk Southern and Drummond entered into a contract ("C-9337") for the transportation of coal and coal products from the Shipyard River Terminal ("SRT") in Charleston, South Carolina to 23 coal-fired power plants (the "Destinations") in the southeastern United States. C-9337 was amended on January 12, 2010. Article 13 of C-9337 provides for base transportation rates for each net ton of coal shipped by Drummond from SRT on Norfolk Southern rail lines to the 23 Destinations. These rates, based on the specific Destination and shipment characteristics, are set forth in detail in Appendices A-H of

the parties' contract. Pursuant to C-9337, Drummond is required to ship a minimum volume of coal each year of the contract term from SRT to one or more of the 23 Destinations on Norfolk Southern's rail lines, using either C-9337 or any third-party contract. If it fails to ship the guaranteed volume in any given year, Drummond must pay Norfolk Southern a shortfall fee. From 2010 – 2014, Drummond did not ship any coal under C-9337 and paid Norfolk Southern the required shortfall fees. For 2015 and 2016, Drummond notified Norfolk Southern it would not ship any coal under C-9337, but Drummond did not pay the shortfall fees for those years.

On January 29, 2016, Drummond filed the instant case against Norfolk Southern. On March 17, 2017, Drummond filed an amended complaint, alleging that Norfolk Southern breached its contract with Drummond.[1] Following a six-day jury trial from September 9, 2019 to September 17, 2019 before this court in Roanoke, Virginia, the jury returned a verdict finding that (i) Norfolk Southern actively worked to prevent Drummond from shipping coal using the rates set forth in the contract and (ii) such conduct constituted a material breach of the contract, either expressly or under the implied covenant of good faith and fair dealing, with the breach first occurring on July 1, 2010. ECF No. 320.

Thereafter, Drummond filed its motion pursuant to Fed. R. Civ. P. 58, seeking entry of judgment which (i) states that Drummond is excused from paying any further shortfall fees under the contract; (ii) orders Norfolk Southern to pay Drummond $49,239,107.03, which

---

[1] While the amended complaint contained six separate counts, on July 17, 2018 the court granted summary judgment in favor of Norfolk Southern with respect to Counts Two, Three, Four, and Five. ECF No. 175. Count One, seeking declaratory relief excusing performance due to Norfolk Southern's breach, and Count Six, seeking rescission, modification, or reformation, were the only two counts that remained at trial.

2

represents the amount of shortfall fees paid by Drummond since July 1, 2010 ($35,221,818.90), and an award of 6% prejudgment interest on those payments ($14,017,288.13); and (iii) provides that post-judgment interest will accrue on the entire amount owed by Norfolk Southern.[2] Meanwhile, Norfolk Southern filed its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, alternatively, a new trial pursuant to Fed. R. Civ. P. 59. The court will address the motion for judgment as a matter of law or new trial first.

## II.

Norfolk Southern requests that the court reverse the jury's verdict and enter judgment as a matter of law in favor of the defendant. In the alternative, Norfolk Southern seeks a new trial based on errors committed during the trial. The court will address each request in turn.

### A. Judgment as a Matter of Law

Fed. R. Civ. P. 50(a)(1) authorizes a court to grant a party judgment as a matter of law where there is "no legally sufficient evidentiary basis for a reasonable jury to find" for the opposing party on an issue.[3] "In order to prevail on a Rule 50(b) motion, the court must determine without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." Bonner v. Dawson, 404 F.3d 290, 295 (4th Cir. 2005).[4] In determining whether to grant a motion for judgment as a matter of law, "the court's sole duty is to examine the sufficiency of the evidence tendered by the party

---

[2] In the alternative, Drummond seeks $45,162,638.80, which represents the prorated amount of shortfall fees paid by Drummond since July 1, 2010, given that some of the 2010 shortfall fees were for a period before July 1, 2010.

[3] It is uncontested that Norfolk Southern moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) during trial and then renewed its motion pursuant to Fed. R. Civ. P. 50(b).

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

3

opposing the motion. If the evidence is sufficient, the judge should not direct the verdict." Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 298 (4th Cir. 1984). In considering a Rule 50(b) motion, "a court must examine the evidence in the light most favorable to the non-moving party." Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994); see also Bonner, 404 F.3d at 295 ("A court should only grant such a motion if it determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party.").

Further, in considering a Rule 50(b) motion, it is the duty of the court "to determine whether a jury verdict can be sustained [ ] on any reasonable theory." Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) (citing Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1246 (Fed. Cir. 1989). "And it must, therefore, harmonize seemingly inconsistent verdicts if there is any reasonable way to do so." Id. (citing Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 119 (1963)).

Norfolk Southern makes two arguments in support of its motion for judgment as a matter of law. First, Norfolk Southern argues that the jury verdict finding a breach of contract was not supported by the weight of the evidence. Second, Norfolk Southern asserts that Drummond's claims were untimely, and the case should have been dismissed based on the statute of limitations.

i. Sufficiency of the Evidence

Norfolk Southern argues that there was insufficient evidence for the jury to return the verdict that Norfolk Southern breached C-9337. At trial, Drummond presented three possible legal theories of breach: (i) an express material breach of contract, (ii) the prevention doctrine,

4

and (iii) a breach of the implied duty of good faith and fair dealing. At the conclusion of the trial, the court instructed the jury on these three types of breach:

1. Material Breach, Instruction no. 17: "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. A party who commits a material breach of a contract is not entitled to enforce the contract, and the other party is excused from performing his contractual obligations." ECF No. 320, at 20.

2. Prevention, Instruction nos. 18 and 19: "A party who prevents the other party from performing his obligation under a contract has breached the contract," and "[t]he party claiming that it was prevented from performing under a contract must establish that such prevention caused it not to perform." Id. at 21-22.

3. Duty of Good Faith and Fair Dealing, Instruction no. 20: "Both parties to a contract have a duty of good faith and fair dealing to act as they promised. Such a duty of good faith and fair dealing is implied in every contract. Each contracting party is entitled to assume that the other party intends to perform the contract in good faith. But the duty of good faith and fair dealing does not add any duties to the contract not already contained within the terms of the contract, nor does it change or subtract any duties from the contract. It is simply a duty to act in good faith according to the terms of the contract." Id. at 23.

Following deliberations, the jury returned the verdict form, reproduced in relevant part:

**VERDICT FORM – SPECIAL INTERROGATORIES**

1. Did Norfolk Southern actively work to prevent Drummond from shipping coal using the rates set forth in C-9337?

    __✓__ Yes      ____ No

    If you answered "Yes" to Question 1, proceed to Question 1(a). If you answered "No" to Question 1, proceed to Question 2.

    a. If so, did such conduct constitute a breach of Article 13 of contract C-9337, either expressly or under the implied covenant of good faith and fair dealing?

        __✓__ Yes      ____ No

5

4. For any breach you have found, did it, either individually or in combination with any other breaches, materially breach the contract C-9337 such that Drummond did not receive the benefit of its bargain?

    ✓ Yes      ___ No

If you answered "Yes" to Question 4, proceed to Question 5. If you answered "No" to Question 4, stop your deliberations now, sign and date this form, and return it to the courtroom.

5. When did the material breach first occur?

    July 1st 2010

ECF No. 319.

Norfolk Southern asserts that because Drummond failed to present sufficient evidence for all three of these theories, the jury verdict should be reversed, and judgment should be entered in favor of the defendant. Norfolk Southern primarily relies on its argument that Drummond failed to prove a breach of contract under the prevention theory, as articulated by Rastek Constr. & Dev. Corp. v. Gen. Land Commercial Real Estate Co., LLC, 294 Va. 416, 426, 806 S.E.2d 740, 745 (2017) ("The prevention doctrine is the well-recognized principle of contract law that if one party to a contract hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused."). However, when assessing a Rule 50(b) motion, it is the duty of the court "to determine whether a jury verdict can be sustained [ ] on any reasonable theory." Atlas Food, 99 F.3d at 599. If the jury verdict can be supported by any theory, then it is sufficient to defeat a judgement as a matter of law. Jaffke v. Dunham, 352 U.S. 280, 281 (1957) ("A successful party in the District Court may sustain its judgment on any ground that finds support in the record.").

The court finds that the jury had sufficient evidence to find a material breach of C-9337. In completing the verdict form, the jury found that Norfolk Southern materially breached an essential part of the contract. See Agra, Gill & Duffus, Inc. v. Benson, 920 F.2d 1173, 1176 (4th Cir. 1990) ("Whether a breach is material is a question of fact."). Under Virginia law, "[a] material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Virginia Elec. & Power Co. v. Bransen Energy, Inc., 850 F.3d 645, 655 (4th Cir. 2017) (citing Horton v. Horton, 254 Va. 111, 114–15, 487 S.E.2d 200, 203–204 (1997)). Further, "[a] party who commits the first breach of contract, if material, is not entitled to enforce the contract and thereby excuses the nonbreaching party from performance." Id.

At trial, ample evidence was presented for the jury to conclude that Norfolk Southern materially breached C-9337. The evidence showed that C-9337 was a unique contract made available to Drummond and that the rates in Article 13 were the primary benefit Drummond derived from C-9337. Because Norfolk Southern entered into third-party contracts with the utilities, providing for penalties if those contracts were not used, a reasonable jury could decide that such action was a breach that is so fundamental to the contract that it defeats an essential purpose of the contract – namely, Drummond's ability to use the contracted-for rates. Therefore, considering the trial evidence in the light most favorable to Drummond, the court finds that there was sufficient evidence to sustain the jury's finding that Norfolk Southern materially breached the C-9337 contract.[5]

---

[5] Because the court finds that there was sufficient evidence for the jury to return the verdict finding a material breach, it need not examine if there was sufficient evidence with respect to the implied duty of good faith and fair dealing or the prevention doctrine. See, e.g., Jaffke, 352 U.S. at 281; Atlas Food, 99 F.3d at 599.

ii. Statute of Limitations

Virginia law imposes a five-year statute of limitations for claims on a written contract. Va. Code Ann. § 8.01-246. "[A] cause of action for breach of contract accrues and the limitation period commences to run from the date of the alleged breach." Arrington v. Peoples Sec. Life Ins. Co., 250 Va. 52, 55, 458 S.E.2d 289, 291 (1995). According to Norfolk Southern, because the jury found that the breach occurred on July 1, 2010, and Drummond did not file this suit until January 2016, Drummond's suit was untimely and judgment as a matter of law should be entered in favor of the defendant. Norfolk Southern further asserts that any breach of C-9337 operates as a continuous breach and the limitations period "begins to run from the date of the wrongful act." Am. Physical Therapy Ass'n v. Fed'n of State Boards of Physical Therapy, 271 Va. 481, 484, 628 S.E.2d 928, 929 (2006).

Norfolk Southern's argument misses the mark. Under Virginia law, the continuing breach theory applies where "the wrongful act is of a permanent nature and . . . produces all the damage which can ever result from it." Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 239, 360 S.E.2d 841, 843 (1987); see also Kancor Americas, Inc. v. ATC Ingredients, Inc., No. 15-cv-589, 2016 WL 740061, at *5 (E.D. Va. Feb. 25, 2016). However, "if the wrongful acts are not continuous and occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." Id.; see also Am. Physical Therapy Ass'n, 271 Va. at 484, 682 S.E.2d at 929.

The court finds that the breach of C-9337 was not continuous, but rather happened at discrete intervals – specifically, each time the shortfall fees came due. While the jury found the first breach of the contract occurred on July 1, 2010, each subsequent due date under C-9337

8

constituted a separate and distinct occurrence that gave rise to separate claims. See Hampton Roads Sanitation Dist., 234 Va. at 239, 360 S.E.2d at 843 (holding that the continuing breach theory is inapplicable and premature in circumstances where harm can still occur); see also Am. Inn, L.P. v. Wolf, 28 F. App'x 316, 320–21 (4th Cir. 2002) (finding that Virginia follows the rule that for claims based on an installment contract, a cause of action accrues, and the statute of limitations begins to run, when each installment becomes due). The evidence shows that the contract came due in February of each year and the first breach, on July 1, 2010, did not cause all of the damage possible under the contract. To the contrary, Drummond only identifies $5,996,370.90 in shortfall fees paid for 2010, with an additional $7 – 7.5 million being paid annually in the subsequent years. Pl.'s Br. Supp. J., ECF No. 342, at 8.

Notwithstanding the jury's finding that July 1, 2010 was the date of the original breach, the evidence at trial showed that Norfolk Southern breached the contract multiple times. In other words, the court finds that there was a series of discrete, independent breaches of C-9337, with each breach giving rise to a new and separate cause of action. See Merch. Realty, Inc. v. Hampton Roads Mgmt. Assocs. Inc., 95 Va. Cir. 507 (2017) (citing Hampton Roads Sanitation Dist., 234 Va. at 239, 360 S.E.2d at 843). Each time Drummond was required to pay the shortfall fees, Norfolk Southern breached the contract and the evidence at trial established that Drummond paid the shortfall fees in February 2011, 2012, 2013, and 2014. Accordingly, Norfolk Southern breached the contract within the five-year statute of limitations period and Drummond's claims were timely filed.[6]

---

[6] Because Drummond sought a declaratory judgment and not damages, it is immaterial if the first breach occurred outside of the five-year statute of limitations period because each subsequent breach gave rise to a new cause of action upon which the same relief could be granted.

Furthermore, because the court finds that Drummond's claims were filed within the appropriate time limit, the court need not address Drummond's argument that Norfolk Southern waived the statute of limitations affirmative defense.

b. <u>Motion for a New Trial</u>

"Unlike a motion made under Rule 50, a motion made under Rule 59(a) permits the Court to weigh the evidence and to consider the credibility of witnesses." <u>Bennet v. R & L Carriers Shared Servs., LLC</u>, 744 F. Supp. 2d 494, 509 (E.D. Va. 2010) (citing <u>Cline v. Wal-Mart Stores, Inc.</u>, 144 F.3d 294, 301 (4th Cir. 1998)). The Fourth Circuit has identified a list of grounds for which a court may exercise its discretion to grant a new trial, including "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." <u>Atlas Food</u>, 99 F.3d at 594; <u>Cline</u>, 144 F.3d at 301.

Norfolk Southern argues that it is entitled to a new trial pursuant to Fed. R. Civ. P. 59 because of three errors that significantly affected the jury's verdict. First, Norfolk Southern claims the court erred in admitting the testimony of Michael Sullivan because his testimony was unreliable, speculative, and prejudicial. According to Norfolk Southern, Mr. Sullivan's "basic math error – which flipped the result of the only detailed bid analysis he conducted – shows that he did not reliably apply any principles and methods to the facts of this case." Def.'s Br. Supp. J., ECF No. 358, at 27. Second, Norfolk Southern avers that the court erred

in allowing Drummond to rely on amendments to the C-9290 contract[7] because the parties had entered into a mutual release related to certain rail transportation contracts, including C-9290. Id. at 28. Finally, Norfolk Southern claims that the court erred when it failed to include a causation question in the verdict form because Drummond must show but-for causation to meet the prevention doctrine's threshold under Rastek.[8]

Drummond argues that each of Norfolk Southern's Rule 59 arguments are meritless. The court agrees. The court reaffirms its oral ruling from November 13, 2018, finding that Mr. Sullivan was qualified to testify as an expert in this case under Fed. R. Evid. 702. Hr'g Mins., ECF No. 191. The court relies on its finding that Mr. Sullivan has over 25 years of experience in the rail industry and has negotiated over 50 rail contracts for the transportation of coal to power plants in the southeastern United States. Mr. Sullivan also demonstrated that he had personal knowledge of typical provisions in rail transportation contracts. While Mr. Sullivan's testimony was shown to be flawed by Norfolk Southern's effective cross-examination, this did not alter Mr. Sullivan's reliability or admissibility as an expert – rather,

---

[7] The C-9290 contract was a rail transportation contract between Norfolk Southern and Drummond, originally entered into on July 1, 2009. To resolve an earlier litigation in 2009, the parties entered into a settlement agreement and executed a mutual release, where Drummond released Norfolk Southern "from all claims, demands, debts, causes of action, or obligations of any kind whatsoever, known or unknown, arising or accruing from the beginning of time to the Effective Date of this mutual release, and arising out of the formation or performance of the Contract, including but not limited to all claims, defenses or avoidances made or asserted in the Action, and all claims, defenses or avoidances that could have been made or asserted in the Action." ECF No. 249 (Ex. B).

[8] In order to prove breach of contract under the prevention doctrine, a party must satisfy two prongs: (i) but-for causation and (ii) a wrongful act. First, an aggrieved party must satisfy the "threshold, but-for causation requirement," establishing that the aggrieved party's performance "would have occurred except for the prevention or hindrance." Rastek, 294 Va. at 429, 806 S.E.2d at 747. The prevention doctrine "has no application when the hindrance is due to some action of the promisor which he was permitted to take under either the express or implied terms of the contract." Id. Second, an aggrieved party must establish that the alleged prevention was due to a wrongful act. Id. ("To protect the conceptual boundaries of the prevention doctrine from becoming hopelessly indistinct, Virginia law has emphasized that the acts or omissions constituting the alleged prevention of the condition must be wrongful, and, accordingly, in excess of the promisor's legal rights.").

the jury was present and observed Mr. Sullivan's performance during cross-examination and any impact of such performance would weigh on his credibility, not the admissibility of his testimony.

With respect to the amendments to C-9290, the court finds that the post-release amendments were properly admitted as evidence during trial. The court reiterates its findings in its memorandum opinion from July 22, 2019. Mem. Op., ECF No. 267. The court stated that "the execution of subsequent amendments after the release date modifying and/or reimposing the volume requirement and liquidated damages provision constitutes discrete post-release conduct for which a new, albeit substantively similar, claim potentially exists. In short . . . this is a case where alleged post-release claims arose out of post-release conduct. It is not the case that the post-release amendments . . . [resurrected] waived claims so much as they potentially gave birth to new ones." Id. at 46-47. The court thus permitted Drummond to "rely upon the post-release amendments to C-9290 in support of its Article 13 claim under C-9337," Id. at 47, and nothing has changed the court's opinion since the entry of that opinion.

Finally, the court finds that the verdict form was not erroneous and need not include a specific causation question as Norfolk Southern asserts. The court properly instructed the jury on causation and the prevention doctrine. See Jury Instructions, ECF No. 320, at 21-22. While the verdict form itself does not restate the law on causation, instruction number 19 does. The jury instructions and the verdict form must be read together, and in this case, they properly instructed the jury on both causation and the prevention doctrine. See United States v. Bey, 414 F. App'x 570, 573 (4th Cir. 2011) ("When reviewing a jury verdict form, [the appeals court] must determine whether it, along with the instructions read to the jury, as a whole adequately

stated the applicable law."). Furthermore, even if it were error, any such error would be harmless as the jury found a material breach of contract separate and apart from the prevention theory. Accordingly, the court finds no good cause to grant Norfolk Southern's motion for a new trial, and the court will deny Norfolk Southern's motion for entry of judgment as a matter of law and motion for new trial.

## III.

Drummond seeks entry of a final judgment which (i) states that Drummond is excused from any further performance or requirement to pay shortfall fees under C-9337; (ii) orders Norfolk Southern to pay Drummond $49,239,107.03, or $45,162,638.80; and (iii) provides that post-judgment interest will accrue on the entire amount owed by Norfolk Southern. Norfolk Southern, on the other hand, argues that if a material breach occurred, Drummond may be entitled to excusal from performance under C-9337, but Drummond is not entitled to the drastic remedy of rescission.

First, Drummond seeks a declaratory judgment that excuses Drummond from future performance under C-9337, including the payment of unpaid shortfall fees. Under Virginia law, "[i]f the initial breach is material, the other party to the contract is excused from performing his contractual obligations." Horton, 254 Va. at 116, 487 S.E.2d at 204. Because the jury found that Norfolk Southern materially breached the contract, Drummond is excused from future performance under C-9337. Accordingly, the court will grant Drummond's motion in part as it relates to Drummond being excused from future performance under C-9337, including the unpaid shortfall fees for 2015 and 2016.

Drummond further asks the court to rescind the contract and put the parties back to the status quo. Determining if the contract is subject to rescission is a question "addressed to the sound discretion of the trial court." Neale v. Jones, 232 Va. 203, 207, 349 S.E.2d 116, 119 (1986); see also Miller v. Reynolds, 216 Va. 852, 856, 223 S.E.2d 883, 886 (1976) ("The remedy of rescission is equitable in nature and is a remedy granted or denied within the sound discretion of the trial court."). Rescission is "the highest and most drastic" remedy, Schmidt v. Household Fin. Corp., II, 276 Va. 108, 115, 661 S.E.2d 834, 837 (2008), because under Virginia law, "[r]escission is the abrogation or annulling of a contract . . . If rescission is granted, the contract is terminated for all purposes, and the parties are restored to the status quo ante." Devine v. Buki, 289 Va. 162, 176–77, 767 S.E.2d 459, 467 (2015).

Ordinarily, rescission is not granted for a simple breach of contract. See Neale, 232 Va. at 207 (citing Bolling v. King Coal Theatres, 185 Va. 991, 996, 41 S.E.2d 59, 62 (1947)). Rather, rescission will be granted only where there is a failure of consideration and such failure defeats the purpose of the contract. Bolling, 185 Va. at 997, 41 S.E.2d at 62; see also Echard v. Waggoner, 126 Va. 238, 247, 101 S.E. 245, 243 (1919) (granting rescission where a party "failed to supply the consideration which she was bound to supply"). The requirement that a contract be supported by consideration is generally satisfied even by a "very slight advantage to the one party or a trifling inconvenience to the other." Brewer v. First Nat. Bank of Danville, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961); see also JTH Tax, Inc. v. Aime, 744 F. App'x 787, 791 (4th Cir. 2018), cert. denied, 139 S. Ct. 855, 202 L. Ed. 2d 583 (2019) ("Virginia has long followed the peppercorn theory of consideration, under which even the most picayune promise may be enough to make an agreement binding."). For example, in R.K. Chevrolet,

14

Inc. v. Hayden, 253 Va. 50, 54, 480 S.E.2d 477, 480 (1997), the Virginia Supreme Court found that an employee switching from an at-will status to having a contract for a two-year term, where the employer could not discharge him except for good cause, constituted consideration because it was a sufficient advantage to the employee and an inconvenience to the employer.

In addition to failure of consideration, to rescind a contract under Virginia law, there must also be a failure of performance that is "total or substantial." Sternheimer v. Sternheimer, 208 Va. 89, 97, 155 S.E.2d 41, 47 (1967); see also RMA Lumber, Inc. v. Pioneer Mach., LLC, No. 08-cv-00023, 2009 WL 4015928, at *9 (W.D. Va. Nov. 19, 2009) (finding that because the contract was partially performed, there was not a failure sufficient to warrant rescission under Virginia Law) (citing Steelman v. Fitzgerald, 69 Va. Cir. 393 (2005) (to justify rescission, "nonperformance must be total or substantial.")). For example, in Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 155, 671 S.E.2d 132, 136 (2009), the Virginia Supreme Court found that because the residents "received services pursuant to the continuing care services contract over nearly fours years . . . The trial court correctly granted Sunrise's motion to strike the [residents] rescission claim specifically because there had been part performance of the continuing care services contract."

Here, as in R.K. Chevrolet, Norfolk Southern provided at least a peppercorn of consideration by giving up its ability to bargain over transportation rates that Drummond could use on demand. Evidence at trial established that such a contract is unique in the coal transportation industry and was extremely valuable to Drummond. Further, as in Sunrise, the court cannot rescind the contract because Norfolk Southern partially performed under the contract. Evidence at trial established that Norfolk Southern stood ready to ship coal under

15

the terms of the contract if Drummond asked, made the rail infrastructure upgrades that the contract required, including constructing and maintaining roughly six miles of new track to enable it to carry Drummond's coal, and reduced Drummond's shortfall fees for 2010 and 2016. Specifically, Norfolk Southern's infrastructure upgrades gave Drummond access to interior power plants by building and maintaining roughly six miles of new track, "a wye track (a triangular junction) and three passing sidings between Columbia and Charleston, South Carolina – at Kingville, Rowesville, and Ridgeville." Def.'s Reply Br., ECF No. 359, at 8.

Drummond would have the court revert the parties to a time before C-9337 was signed. However, this is not possible where Norfolk Southern partially performed under the contract. Indeed, Norfolk Southern cannot recoup the costs associated with making the infrastructure upgrades. Because Norfolk Southern partially performed under the contract and there was no failure of consideration, rescission is not an available remedy. Accordingly, the court will deny Drummond's motion in part as it relates to rescinding the contract.

## IV.

For the reasons stated herein, the court **DENIES** Norfolk Southern's motion for judgment as a matter of law or, alternatively, for a new trial, ECF 343, and **GRANTS in part** Drummond's motion for entry of judgment, ECF No. 342, as it pertains to excusing Drummond from any future performance under C-9337, including the payment of shortfall fees for 2015 and 2016, and **DENIES in part** Drummond's motion for entry of judgment as it pertains to rescinding C-9337 and Drummond recouping the shortfall fees it paid.

An appropriate Order will be entered.

Entered: 02-26-2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge