IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DRUMMOND COAL SALES, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:16-cv-00489 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| NORFOLK SOUTHERN RAILWAY ) | Chief United States Judge |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter is before the court on plaintiff Drummond Coal Sales, Inc.'s motion to alter or amend judgment. ECF No. 381. Defendant Norfolk Southern Railway Company has responded, ECF No. 385, and this matter is ripe for disposition.[1] In its motion, Drummond once again asks the court to rescind the contract, arguing that the jury verdict in this case requires it. The court disagrees that the equitable remedy of rescission is required, and, in any event, concludes that imposition of this equitable remedy is inappropriate given the entirety of the jury verdict and under the unique facts and circumstances of this case. As such, Drummond's motion to alter or amend the judgment, ECF No. 381, is **DENIED**.

I.

On February 26, 2020, the court entered a memorandum opinion and order granting in part and denying in part Drummond's motion for entry of judgment and denying Norfolk

---

[1] In addition to the motion and response, Drummond filed a reply, ECF No. 386, and Norfolk Southern, with leave of the court, filed a sur-reply, ECF No. 389. In addition, the parties responded to the court's request for additional briefing, ECF No. 390, with supplemental briefs. ECF Nos. 391 and 392.

Southern's motion for judgment as a matter of law. ECF Nos. 373, 374. Based on the jury verdict and the evidence adduced at trial, the court granted Drummond's motion excusing it from any future performance under the C-9337 contract but exercised its equitable discretion to deny Drummond's motion to rescind the contract based on the equities of this case, including Norfolk Southern's part performance. As such, the court denied Drummond's request for refund of shortfall fees it paid Norfolk Southern from 2010 – 2014.

In its motion, Drummond argues that the court's decision is "fundamentally inconsistent" because the court found Norfolk Southern's material breach of C-9337 excuses Drummond from future performance under the contract but does not require Norfolk Southern to repay the shortfall fees. See Pl.'s Mot., ECF No. 382, at 2. Drummond also asserts that the court erred by not rescinding the contract by relying on "legally insufficient" factors. Id. at 3. In short, Drummond argues the court got it wrong and that the court should grant relief under Federal Rule of Civil Procedure 59(e). The court disagrees.

This case has been pending since January 29, 2016, and the court is well-acquainted with the facts and legal arguments presented in the extensive summary judgment (and reconsideration) briefing and hearings conducted on April 13, 2018 and November 13, 2018, multiple motion in limine hearings, and during the course of the six day trial in September 2019.[2] After reviewing the voluminous post-trial briefing and holding a two-hour hearing on the post-trial motions, the court thoroughly considered the arguments and authorities raised by both parties. By memorandum opinion and order entered February 26, 2020, the court laid

---

[2] For that matter, the court is familiar with prior litigation, and settlement thereof, between these parties over the C-9337 contract as outlined in its memorandum opinion in Norfolk Southern Railway Co. v. Drummond Coal Sales, Inc., ECF No. 117, Civil Action No. 7:08cv00340 (W.D. Va. Aug. 29, 2016).

out its rationale and reasoning for granting in part and denying in part Drummond's motion for judgment. Following Drummond's pending Rule 59 motion, and after reviewing the parties' further briefing on this subject, the court remains convinced that its decision to decline the remedy of rescission is appropriate and equitable under the procedural history and unique facts of this case. As such, the court affirms its conclusion from February 26, 2020 and will **DENY** Drummond's motion for reconsideration. The court will take this opportunity to further elaborate on its findings and conclusions.

## II.

Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The Fourth Circuit has directed that "a court may grant a Rule 59 motion in three circumstances: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" Bogart v. Chapell, 396 F. 3d 548, 555 (4th Cir. 2005) (quoting United States v. Westinghouse Savannah River Co., 305 F. 3d 284, 290 (4th Cir. 2002)). Drummond's motion is founded only on prong (3), as it argues that the exercise of the court's discretion to deny its request for rescission constitutes clear legal error. It is well settled that "Rule 59(e) 'may not be used to relitigate old matters' or to 'raise arguments which could have been raised prior to the issuance of the judgment.'" O'Connor v. Columbia Gas Transmission Corp., 643 F. Supp. 2d 799, 810 (W.D. Va. 2009) (quoting Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 404 (4th Cir. 1998)). Instead, a Rule 59(e) motion "is considered to be 'an extraordinary remedy that should be used sparingly.'" Lee v. Zom Clarendon, L.P., 665 F. Supp. 2d 603, 615–16 (E.D. Va. 2009) (quoting

3

Pac. Ins., 148 F.3d at 403), aff'd sub nom. Sun Yung Lee v. Clarendon, 453 F. App'x 270 (4th Cir. 2011).

### III.

Under Virginia law, "equitable rescission is a 'remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties.'" Young-Allen v. Bank of America, N.A., ___ Va. ___, 839 S.E.2d 897, 900 (2020)[3] (citing Schmidt v. Household Fin. Corp., II, 276 Va. 108, 115, 661 S.E.2d 834 (2008)). Virginia law is clear that the decision to grant or deny rescission is "within the sound discretion of the trial court." Callison v. Glick, 297 Va. 275, 289, 826 S.E. 2d. 310, 318 (2019); see also Neale v. Jones, 232 Va. 203, 207, 349 S.E.2d 116, 119 (1986) ("The decision of a suit for rescission . . . is addressed to the sound discretion of the court."); Miller v. Reynolds, 216 Va. 852, 856, 223 S.E. 2d 883, 886 (1976) ("The remedy of rescission is equitable in nature and is a remedy granted or denied within the sound discretion of the trial court."); Bolling, 185 Va. at 996, 41 S.E.2d at 62 (quoting Dobie v. Sears, Roebuck & Co., 164 Va. 464, 470,

---

[3] The Virginia Supreme Court decided Young-Allen while the current motion was pending. Both parties have addressed how the Young-Allen decision impacts this case. In Young-Allen, the Virginia Supreme Court held that in a case involving a completed foreclosure sale, a court will generally not rescind a contract unless "potential exceptions" apply. 839 S.E.2d at 900. One such exception is that "a material breach of a deed of trust could, in certain circumstances, constitute sufficient grounds to warrant the remedy of rescission." Id. The Virginia Supreme Court further found that "the remedy of equitable rescission in this context is only available when the underlying breach of contract is 'substantial' or 'material.'" Id. at 901. Further, Young-Allen was decided based on the plaintiff's failure "to plead facts to support the drastic remedy of equitable rescission," and not on the merits of the breach of contract claim. Id. The court finds that Young-Allen does not impact the analysis made in its February 26, 2020 memorandum opinion. In fact, the court finds that Young-Allen supports the finding that rescission is an available remedy for a material breach of contract left to the discretion of the court, and not a required remedy, as Drummond asserts. See Pl.'s Mot., ECF No. 386, at 3. Young-Allen does not disrupt the holding of Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 156, 671 S.E. 2d 132, 136 (2009), where the Virginia Supreme Court held that "where a party wishes to rescind a contract on the ground of failure of consideration, if the failure has been partial only and a subsisting executed part performance is in his hands, and there has been no fraud on the part of the other, rescission will not be allowed." See also Bolling v. King Coal Theatres, 185 Va. 991, 997, 41 S.E. 2d 59, 62 (1947).

4

180 S.E. 289, 291 (1935) ("A suit for rescission is . . . addressed to the sound discretion of the court")). Further, rescission is the "highest and most drastic" remedy available to the court, Young-Allen, 839 S.E.2d at 900, and "[i]f rescission is granted, the contract is terminated for all purposes, and the parties are restored to the status quo ante." Schmidt, 276 Va. at 115, 661 S.E. 2d at 837–38.

Drummond argues that the court made an error of law in denying rescission, asserting that "Virginia law and the jury's factual findings require rescission in this case." Pl.'s Reply, ECF No. 386, at 2. Drummond relies on three Virginia Supreme Court cases, none of which stands for such a proposition. First, in Miller, the Virginia Supreme Court found that when deciding if rescission is the proper remedy, "[e]ach case is dealt with in light of its own circumstances." 216 Va. at 856, 223 S.E.2d at 886. Specifically, in affirming the trial court's rescission order, the Virginia Supreme Court found that where the parties made a mutual mistake, "[t]he equities of [that] case clearly require rescission." Id. Thus, the Miller court directs this court to look at the circumstances of the case and only requires rescission where there has been a mutual mistake, not a breach of contract.[4]

Drummond cites two additional Virginia Supreme Court breach of contract cases, Echard v. Waggoner, 126 Va. 238, 244, 101 S.E. 245, 247 (1919), and Strock v. MacNicholl,

---

[4] The court has not found any binding cases that apply Miller to require rescission as the result of a breach of contract. The court notes that in certain cases, such as fraud in the inducement and mutual mistake, the Virginia Supreme Court has been clear that rescission is required. See Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 362, 699 S.E.2d 483, 489 (2010) ("A false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract."); Miller, 216 Va. at 856, 223 S.E.2d at 886 ("In cases of plain mistake or misapprehension, . . . equity will rescind the conveyance, if the error goes essentially to the substance of the contract."). The Virginia Supreme Court has refused to draw such a clear line when it comes to breach of contract, and the decision to rescind a contract for a breach is left to the discretion of the trial court. See Neale, 232 Va. at 209, 349 S.E.2d at 120 (finding in a breach of contract case that "the trial court did not abuse its discretion in holding that the lessors had not made out a case for rescission").

5

196 Va. 734, 735, 85 S.E.2d 263, 264 (1955), neither of which holds that rescission is a required remedy in this case. In Echard, the Virginia Supreme Court affirmed the trial court's rescission order, finding "[the grantee] has failed to supply the consideration which she was bound to supply, and it follows that the trial court rightly determined that the grantors are entitled to have the instrument canceled for such failure of consideration." 126 Va. at 244, 101 S.E. at 247. In Strock, the Virginia Supreme Court reversed a trial court's decision to deny rescission because the breaching party "wholly failed and neglected" to perform under the contract and did "not intend to perform her obligations in the future." Id. at 736, 746. Both decisions rely on the breaching party substantially nonperforming (or completely nonperforming) under the contract. As the court discussed in its memorandum opinion, that is not the case here – the court found that Norfolk Southern partially performed under the contract such that rescission was not the proper remedy. See Bolling, 185 Va. at 997, 41 S.E.2d at 62 ("Rescission may be granted for a failure of consideration where such failure defeats the purpose of the instrument, as in Echard v. Waggoner, 126 Va. 238, 101 S.E. 245; but where a party wishes to rescind a contract on the ground of failure of consideration, if the failure has been partial only and a subsisting executed part performance is in his hands, and there has been no fraud on the part of the other, rescission will not be allowed."); see also Sunrise Continuing Care, 277 Va. at 156, 671 S.E.2d at 136. Accordingly, Echard and Strock do not require rescission in this case.[5]

---

[5] Drummond also cites third-party authorities and lower Virginia court cases to suggest that Virginia law "is not its own island when it comes to the legal principles of rescission, but rather, like the rest of the country, recognizes that rescission and restitution will lie provided the breach is substantial or material." Pl.'s Reply, ECF No. 386, at 4 (internal citations omitted). However, in a diversity case, this court is required to follow the "most recent teaching by the Virginia Supreme Court." Gill v. Rollins Protective Services Co., 722 F.2d 55, 58 (4th Cir. 1983). As discussed infra, this court relied on Sunrise Continuing Care as the most recent Virginia

6

While the court found that "rescission is not an available remedy," Mem. Op., ECF No. 373, at 16, even if rescission were available, the court takes this opportunity to exercise its equitable discretion to deny the requested relief. See Young-Allen, 839 S.E.2d at 900; Schmidt, 276 Va. at 115, 661 S.E.2d at 837. There are several reasons why it would be inequitable for Drummond to recoup the shortfall fees it paid during 2010 – 2014.

First, although Drummond bargained for the important ability to ship coal under the utility contracts to satisfy its minimum volume requirements, see Dennis Steul Trial Test., ECF No. 332, at 175-176, 181, it never elected to do so. Instead, Drummond made the business decision to send the vast majority of its coal to the more profitable overseas market. As Drummond's coal transportation expert Michael Sullivan testified, during this time frame Drummond generated $11 billion in revenue selling its coal abroad instead of domestically. Sullivan Trial Test., ECF No 336, at 104. On cross-examination, Sullivan conceded:

> Q. Now, Mr. Sullivan, if Drummond simply chose to sell its coal abroad because it was making more money selling its coal abroad than it could by selling it to destinations in the U.S. under the contract, if that were the decision that Drummond made, then nothing that Norfolk Southern did affected Drummond's choice, correct?
>
> A. If Drummond made the choice to sell their coal somewhere else, okay, then Drummond made that choice.

Id. at 105. The evidence at trial established that Drummond sold the bulk of its Colombian coal overseas. See Joint Stipulation of Facts, ECF No. 298, ¶¶ 60-62; see also Defense Trial Ex. 3 (admitted Sept. 11, 2019).

---

Supreme Court case on rescission as the result of a breach of contract to find that because Norfolk Southern partially performed under the contract, rescission was not a required remedy. 277 Va. at 156, 67 S.E.2d at 136.

Consistently, the jury found that, with regard to Article 27(i), Drummond did not notify Norfolk Southern that it anticipated not being able to ship the guaranteed volume of coal required by C-9337. See Jury Verdict, Answer to Special Interrog. No. 2, ECF No. 319. As reflected in the jury's answer to Special Interrogatory No. 2, there was no evidence that Drummond reached out to Norfolk Southern (other than its perfunctory annual notification that Drummond anticipated shipping no coal for the year) or otherwise made any effort to "work together in good faith to identify and implement sales and transport alternatives that will permit Shipper [Drummond] to satisfy its Guaranteed volume obligations." C-9337 Contract, Article 27(i), ECF No. 302-1, at 21. This finding by the jury, ignored by Drummond, is important to the court's weighing of the equities in this case.

Indeed, consideration of the entire jury verdict, including the finding of breach of Article 13 of C-9337, but no breach of Article 27(i), is consistent with the court's equitable determination to deny rescission. While the jury found that Norfolk Southern actively worked to prevent Drummond from shipping coal using the rates set forth in C-9337, it likewise found that Drummond made no effort to notify Norfolk Southern that it anticipated not being able to ship the guaranteed volume of coal. Considering the entirety of the jury's verdict, rather than simply the finding as to Special Interrogatory No. 1, as urged by Drummond, denying Drummond's request for rescission is consistent with, rather than repugnant to, the jury's view as to all of the evidence and all of the issues in this case.

The jury's finding on Special Interrogatory No. 2, rejecting Drummond's claim for breach of Article 27(i) of the C-9337 contract, confirms the court's view of the evidence that Drummond made the business decision to sell the bulk of its Colombian coal overseas, and

8

paid shortfall fees to Norfolk Southern under C-9337 to keep its option open to ship its coal to domestic southeast utilities should market conditions make it favorable to do so. Taken as a whole, the jury verdict supports the court's finding that the equities do not support, much less require, rescission.

In short, Drummond's argument conflates the material breach of the contract found by the jury on Special Interrogatory No. 1 — that Norfolk Southern actively worked to prevent Drummond from shipping coal using the rates set forth in C-9337 — with its request for rescission, which asks the court to undo Drummond's business decision to profit from overseas sales while paying shortfall fees. All along, Drummond had the ability to ship coal to the domestic destinations covered by the C-9337 contract, but made the business decision not to do so, instead paying shortfall fees to keep the option open to use the rates in C-9337 should the domestic coal market become more economically attractive.

Second, to order rescission of C-9337 would undo the fact that Drummond released Norfolk Southern from any liability with regard to utility contracts not executed or amended after 2010. As part of the parties' settlement of prior litigation regarding the shortfall fees under C-9337, Drummond executed a broad release which the court found barred any claims by Drummond for any C-9337 destination having a utility contract predating the release. The court has issued three opinions concerning the impact of that release on Drummond's claims in this case. See Mem. Ops. ECF No. 267, at 29-47, ECF No. 294; Norfolk Southern Railway Co. v. Drummond Coal Sales, Inc., ECF No. 117, Civil Action No. 7:08cv00340 (W.D. Va. Aug. 29, 2016). Moreover, the proof offered by Drummond at trial reflected the operation of the 2010 mutual release. A significant aspect of the testimony of Drummond's coal

9

transportation expert Sullivan was his explanation of a color-coded demonstrative aid. See Demonstrative Ex., ECF No. 385-1; Sullivan Trial Test., ECF No. 336, at 64-65, 68-72, 145-149. Employing this demonstrative aid, Sullivan testified as to the impact of Norfolk Southern's utility contracts on Drummond's ability to use the rates in C-9337.[6] Sullivan offered no opinion about the number of white boxes displaying utility contract numbers because these boxes "reflect contracts that were not executed and/or amended in 2010 or beyond." Sullivan Trial Test., ECF No. 336, at 70. And although Sullivan did not testify to this effect, those are the destinations and years subject to the release executed by Drummond as part of the January 2010 settlement with Norfolk Southern. Given that Drummond had released Norfolk Southern from liability as regards the white numbered destinations in Sullivan's demonstrative aid, it would be inequitable to rescind the contract in its entirety, which would have the effect of undoing the parties' mutual agreement to settle and release claims predating 2010.

Third, consideration of Drummond's trial evidence offered through its coal transportation expert, Sullivan, raises another point supporting the court's decision not to rescind the contract. Sullivan testified that he had no information about the utility contracts for the destinations and years indicated by the empty white boxes in his demonstrative aid. Id. at 69-70. These empty white boxes included the McDonough, Clinch River, Glen Lyn, Chesapeake and Potomac River destinations, each of which closed by 2015.[7] Drummond

---

[6] As Sullivan explained, his demonstrative aid, ECF 385-1, color coded each of the utility destinations in C-9337 based on the impact of the liquidated damages provisions in the Norfolk Southern utility contracts. The black boxes indicated closed plants. Sullivan Trial Test., ECF No. 336, at 69. A red box reflected Sullivan's opinion that the liquidated damages provision in that utility's contract with Norfolk Southern precluded the utility from taking coal under C-9337 without paying liquidated damages. Id. Orange boxes reflected a partial limitation on the use of C-9337. Id. at 69, 72.

[7] As Norfolk Southern points out, Sullivan's color coding of the Harllee destination as an empty white box was apparently erroneous.

presented no evidence that Norfolk Southern's utility contracts impaired Drummond's ability to ship coal under C-9337 to these destinations prior to their closure. Just as with other elements of its breach of contract case, Drummond bears the burden of proof concerning the remedy of rescission. The Supreme Court of Virginia has noted the burden of proof borne by a plaintiff seeking rescission of a contract.

> One of the first principles with respect to the rescission of a contract is that in seeking a remedy which calls for the highest and most drastic exercise of the power of a court of chancery — to annul and set at naught the solemn contracts of parties — there must first be a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, **and satisfactory proof of these facts**, to justify the interposition of the court; and, in addition to all this, the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract.

Schmidt v. Household Finance Corp., II, 276 Va. 108, 115, 661 S.E.2d 834, 837 (2008) (quoting Bonsal v. Camp, 111 Va. 595, 600, 69 S.E. 978, 979 (1911)) (emphasis added). The absence of evidence as to whether Norfolk Southern's contracts with the utilities served by the McDonough, Clinch River, Glen Lyn, Chesapeake and Potomac River destinations stations prior to 2015 precluded Drummond's ability to use C-9337 for those destinations represents a failure of proof which cannot be ignored in assessing Drummond's request to impose the drastic remedy of rescission.

Fourth, it is wrong to suggest that Norfolk Southern did not part perform under the C-9337 contract. Drummond's expert testified that the C-9337 contract bound Norfolk Southern to ship Drummond's coal at fixed rates for multiple years, enabling Drummond to ship coal to southeast utility destinations at the bargained-for C-9337 rates even if the market price for rail rates skyrocketed. As Drummond argued, its benefit from the C-9337 contract

was the option to use the C-9337 rates to ship coal to those destinations. See, e.g., Sullivan Trial Test., ECF No 336, at 146-149. If shipping coal to these destinations was not profitable for Drummond, it could, as it did, choose to pay shortfall fees. If domestic rail rates rose substantially, Drummond could take advantage of the locked-in rates in C-9337, making its coal more attractive to utilities. As Sullivan conceded on cross-examination:

> Q.  Drummond agreed to the - - to pay the shortfall fees in the contract if it did not ship the minimum volume? Drummond agreed to that, right?
>
> A.  They agreed to it, but they didn't ask for it. That's what I'm - -
>
> Q.  And in exchange, Norfolk Southern agreed to stand ready to transport millions of tons of coal for Drummond and to keep the rates constant from - - for ten years, from the beginning of the contract to the end of it, regardless what happened in the market for rail rates.
> So if the rail rates during the course of this contract skyrocketed, Norfolk Southern would not be able to raise the rates to those levels, because it was tied into the rates under this contract, and any time Drummond decided that they wanted to ship the coal, Norfolk Southern would have to ship it under those rates?
>
> A.  Yes, the contract – they bargained for those rates, and Norfolk Southern would have to, if they tendered coal pursuant to that contract.
>
> Q.  And, sir, did Norfolk Southern even a single time, at any point in all those years, ever refuse to ship Drummond's coal under the rates that they agreed to in the contract?
>
> A.  Not that I'm aware of.

Id. at 150-151; see also Trial Test. of Drummond's John McClellan, ECF No. 332, at 89-90.

Further, although not a focus of the issues facing the jury, the equities do not allow the court to ignore the substantial contractual obligation that Norfolk Southern completed — the

12

construction of infrastructure improvements to allow Drummond to ship the volume of coal called for in C-9337 from the Shipyard River Terminal in Charleston, South Carolina, to utilities served by the Norfolk Southern in southeastern United States. Norfolk Southern was obligated under the C-9337 contract to construct a wye track at Wateree, South Carolina and three passing sidings between Columbia and Charleston, South Carolina at a total cost of $8.8 million. Norfolk Southern met its contractual obligation to construct these infrastructure improvements. McClellan Trial Test., ECF No. 332, at 89. While Drummond dismisses this part performance because C-9337 required it to fund the infrastructure improvements, it ignores the fact that Drummond, in turn, was to be refunded by Norfolk Southern for its infrastructure payments on each ton of coal it shipped. Id. at 66-67. Drummond's McClellan testified that "[b]asically, as the tons were shipped, we could get a refund or rebate off of that rate to help return that money back to us that we put up for these side tracks." Id. at 67. Therefore, had Drummond shipped coal under C-9337, as contemplated, the per ton rebate paid by Norfolk Southern would "cover that initial investment," id., ultimately requiring Norfolk Southern to absorb the cost of infrastructure improvements. In light of the requirement that Norfolk Southern refund Drummond for the infrastructure upgrades on each ton of coal Drummond shipped, the court cannot ignore the substantial part performance by Norfolk Southern in the construction of the wye track and passing siding infrastructure improvements.

At the end of the day, given Drummond's business decision to pay the shortfall fees and ship its coal to more lucrative overseas markets, Norfolk Southern's part performance in constructing the wye track and passing siding infrastructure improvements, and the parties'

prior mutual release, rescission of the contract would be inequitable. To be sure, the jury found a breach of contract due to Drummond's inability to use the rates in C-9337, but it also found that Drummond failed to prove a breach of Article 27(i), bearing directly on the shortfall fee issue. As such, the circumstances of this case suggest that the proper remedy afforded by this breach would be a claim for damages, rather than rescission.

In short, the court does not believe that the entirety of the jury verdict and equity require that it undo Drummond's business decision to ship its coal overseas while paying Norfolk Southern the shortfall fees from 2010 to 2014. Therefore, Drummond has failed to demonstrate that the court made an error of law, as required by Rule 59(e). See Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Accordingly, the court will deny Drummond's Rule 59(e) motion.

## IV.

Drummond makes additional arguments, which the court addresses briefly. Drummond asserts that the court erred in denying rescission because it relied on the following three factors: (i) that Norfolk Southern provided at least a "peppercorn" of consideration for the contract; (ii) that Norfolk Southern partially performed under the contract; and (iii) that the parties could not literally be returned to the status quo ante. Pl.'s Mot., ECF No. 382, at 2. None of these claims meet the high burden warranting reconsideration under Rule 59(e).

First, Drummond argues the court erred because the "peppercorn" theory of consideration is applicable to contract formation, not rescission. The court agrees that the "peppercorn" theory applies to contract formation. When a party seek to rescind a contract on the grounds of failure of consideration, as Drummond seeks, the court must consider if

such a failure of consideration has been partial or complete. See Bolling, 185 Va. at 997, 41 S.E.2d at 62. The court merely began its analysis at contract formation to analyze the entire consideration provided by Norfolk Southern. The court found that "Norfolk Southern provided at least a peppercorn of consideration by giving up its ability to bargain over transportation rates that Drummond could use on demand." Mem. Op., ECF No. 373 at 15. Indeed, the court then elaborated on how Norfolk Southern partially performed under the contract by providing further consideration, in addition to the "peppercorn," when it denied rescission. See id. at 15-16.

Second, Drummond argues the court erred in finding that Norfolk Southern partially performed under the contract. The court disagrees. As discussed above, under Virginia law, rescission is not the proper remedy "if the failure has been partial only and a subsisting executed part performance is in [the plaintiff's] hands." Sunrise Continuing Care, 277 Va. at 156, 671 S.E.2d at 136. At the very least, Norfolk Southern constructed the track improvements necessary to move Drummond's coal from the Shipyard River Terminal in Charleston to southeast U.S. utilities. While Drummond was required to pay for the infrastructure improvements, the C-9337 contract provided that it was to get its money back in a per ton rail rate discount.

In addition, the cross-examination of Drummond's expert Sullivan established that, for certain destination during certain years, there was no utility contract liquidated damages impediment to Drummond's shipping coal sufficient to meet its minimum volume requirement under C-9337. As regards these destinations, Norfolk Southern fully performed. Yet Drummond still shipped no coal to those utilities. Indeed, Sullivan conceded that these

15

utilities consumed multiple times the amount of coal required to meet Drummond's minimum volume requirements under the C-9337 contract.

> Q. Mr. Sullivan, even with your analysis, even if we take what you were talking with Mr. Wells about, about all these – Drummond being foreclosed from all these different plants, even under your analysis, even as late as 2017, the utilities – the destinations to which Drummond could sell were using two to four times the coal each year compared to Drummond's minimum commitment, right?
>
> A. The total 23 plants?
>
> Q. Well, no. In 2017, you're saying there weren't 23 plants left, right?
>
> A. Right.
>
> Q. Okay. Whichever plants were left, and taking out the plants that you claim Drummond was foreclosed to selling to, leaving just the ones that you say are still in the green, I think you had, they were still using more than twice and more than three times the coal compared to Drummond's minimum volume commitment under this contract?
>
> A. In total, yes.

Sullivan Trial Test., ECF No 336, at 137. Thus, even when the C-9337 contract was specifically added to the utility contract for the Wateree plant, Drummond shipped no coal to Wateree. Nor did Sullivan identify any impediment to coal shipments to the Wansley or Hammond destinations from 2015 on. Id. at 71; see Sullivan's Demonstrative Ex., ECF No 385-1 (green boxes). Plainly, factors other than the liquidated damages provisions in Norfolk Southern's utility contracts caused Drummond not to meet the minimum volume requirements in C-9337. Even though this evidence concerns the latter years of the contract as to which Drummond made no shortfall fee payments, it confirms that for reasons unrelated to liquidated damages

16

provisions in Norfolk Southern's utility contracts, Drummond chose to ship no coal under C-9337. These circumstances suggest that it would be inequitable to rescind the contract and refund the shortfall fees Drummond chose to pay in earlier years.

Finally, Drummond argues the court erred because rescission does not require literal restoration of the status quo ante. While the court found that "Drummond would have the court revert the parties to a time before C-9337 was signed," Mem. Op., ECF No. 373, at 16, it did not deny rescission based on the inability to literally restore the parties to a time before C-9337 was signed. Instead, the court followed the guidance of the Virginia Supreme Court, where "[a] court of equity is always reluctant to rescind unless the parties can be put in statu[s] quo. If this cannot be done, it will give relief only where the clearest and strongest equity imperatively demands it." Dobie, 164 Va. at 474, 180 S.E. at 292; see also Adelman v. Conotti Corp., 215 Va. 782, 794, 213 S.E.2d 774, 781 (1975). The court considered the ability to return the parties as close to the status quo as possible, and after weighing the equities, the court denied rescission.

## V.

The decision whether to invoke "the highest and most drastic exercise of the power of a court of chancery," Young-Allen, 839 S.E.2d at 900, is vested in the sound discretion of the court. After reflecting on the entirety of the jury verdict; Norfolk Southern's part performance in constructing the infrastructure improvements; the parties' prior release of claims; the pre-2015 lapse in the trial evidence as to certain destinations; and Drummond's decision to focus its coal sales overseas instead of the area served by C-9337, even in those instances where the Norfolk Southern utility contracts posed no impediment to Drummond, the drastic equitable

17

remedy is not appropriate under the unique facts of this case. As such, the court **DENIES** Drummond's motion for reconsideration. ECF No. 381.

All matters relating to this cause having been addressed, a Final Order will be entered reflecting that the Judgment entered on March 3, 2020 remains in effect.

Entered: July 27, 2020

Mike Urbanski
cn=Mike Urbanski, o=US Courts,
ou=Western District of Virginia,
email=mikeu@vawd.uscourts.gov,
c=US
2020.07.27 18:12:02 -04'00'

Michael F. Urbanski
Chief United States District Judge